**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**ROBERT TALLEY**                                                **CIVIL ACTION NO.**

**VERSUS**                                                          **23-202-SDD-EWD**

**MASTEC, INC., ET AL.**

*CONSOLIDATED WITH*

**ROBERT TALLEY**                                                **CIVIL ACTION NO.**

**VERSUS**                                                          **23-284-SDD-EWD**

**AG QUALITY CONSTRUCTION, LLC, ET AL.**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 22, 2024.

*/s/ Erin Wilder-Doomes*
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**ROBERT TALLEY**                                                     **CIVIL ACTION NO.**

**VERSUS**                                                                        **23-202-SDD-EWD**

**MASTEC, INC., ET AL.**

*CONSOLIDATED WITH*

**ROBERT TALLEY**                                                     **CIVIL ACTION NO.**

**VERSUS**                                                                        **23-284-SDD-EWD**

**AG QUALITY CONSTRUCTION, LLC, ET AL.**

*FILE IN BOTH CASES*[1]

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[2]

Before the Court is the Motion for Leave to File Second Amended Complaint, filed by Robert Talley ("Plaintiff"),[3] which is opposed by Defendants Mesa Underwriters Specialty Insurance Company ("MUSIC") and Rene P. Boudreaux, III ("Boudreaux"), and by proposed defendant Mastec Network Solutions, LLC ("MNS") (collectively "Defendants").[4]  Because

---

[1] Citations to record documents that are not preceded by the case number are found in the lead case, No. 23-202.
[2] The Fifth Circuit has recognized that magistrate judges may decide motions for leave to amend, and therefore, the undersigned rules directly on the Motion for Leave to File Second Amended Complaint. *Mornes v. Valdez,* 414 F.Supp.3d 888, 890 (N.D. Tex. 2019) (noting that, "…the Court of Appeals for the Fifth Circuit has addressed this issue, holding that a motion for leave to amend is not dispositive and, therefore, a magistrate [judge] may rule on it. *See PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1420-21 (5th Cir. 1996) ….") (other citations omitted).  However, because remand of the case is recommended, a Report and Recommendation is issued.
[3] R. Doc. 51, and *see* R. Doc. 59 (Plaintiff's reply memorandum).  The Motion attached the proposed Second Amended Complaint but did not attach a memorandum with supporting argument and authorities. While Plaintiff's reply memorandum contains Plaintiff's substantive argument and authorities, arguments that are newly raised in reply are generally not properly considered. *See, e.g., Jefferson v. Christus St. Joseph Hosp.,* 374 Fed.Appx. 485, 492 (5th Cir. 2010) ("…a plaintiff may not rely on new claims raised for the first time in a response…."). Plaintiff was ordered by the Court to amend but went beyond what he was specifically ordered to do by attempting to add new claims and a new party. R. Docs. 27, 32. However, due to the muddy procedural history of this case, the Court will consider the arguments raised in Plaintiff's reply memorandum as they relate to the allegations in the proposed Second Amended Complaint, which was attached to the Motion when filed.  Because Plaintiff did not provide any initial analysis of the requisite factors related to amendment, Defendant's arguments are sometimes addressed first in this Report.
[4] R. Docs. 53-54; and *see* R. Doc. 52 (the Court's Briefing Order governing the filing of the oppositions). Plaintiff originally named "Mastec Inc." as a defendant; however, Mastec Network Solutions, LLC was named in the Notice

Plaintiff has alleged a tort claim against a nondiverse defendant, Boudreaux, that survives a Fed. R. Civ. P. 12(b)(6) analysis, the Motion should be granted. Because the parties are not of diverse citizenship, it is recommended that these consolidated cases be remanded to Louisiana state court.

## I. BACKGROUND

The factual and procedural background of this case leading up to the current Motion is detailed in earlier orders and minutes of the Court and will not be repeated here,[5] except as follows. This case involves Plaintiff's claims for property damage arising out of the installation of fiber optic cable on his property. Plaintiff filed two separate Petitions in Louisiana state court. In one Petition, Plaintiff sued Mastec, Inc., and its project manager, Boudreaux. In the other, Plaintiff sued AG Quality Construction, LLC ("AG Quality"), its insurer MUSIC, and a project manager for AT&T, Kevin Milton ("Milton").[6] Both cases were removed to this Court and then consolidated for all purposes.[7]

The Notices of Removal in both cases assert that this Court has diversity subject matter jurisdiction. The amount in controversy appears to be met based on Plaintiff's statement in one of the state court Petitions that he sustained damages of $158,039.57 that has not been paid.[8] After several briefing orders and discussions regarding deficient citizenship allegations, the record now reflects that Plaintiff is a Louisiana citizen; Defendant Mastec, Inc., and proposed defendant, MICC, are incorporated and have their principal places of business in Florida; proposed

---

of Removal and contends that it is the proper Mastec entity defendant. *See* R. Docs. 1; 1-1, p. 1; 12. In the proposed Second Amended Complaint, Plaintiff seeks to add MNS as a defendant, along with Mastec Inc. and another Mastec entity, Mastec Infrastructure Construction Corporation ("MICC") (collectively "the Mastec Defendants").

[5] A considerable amount of time has been devoted to the issue of subject matter jurisdiction. In the seven months between removal of the lead case and the current Motion, the Court issued 2 briefing orders regarding subject matter jurisdiction, issued an order striking non-compliant pleadings that failed to establish subject matter jurisdiction, and conducted two telephone conferences, during one of which subject matter jurisdiction was discussed. *See* R. Docs. 7, 12, 27, 32, 49.

[6] R. Doc. 1-1 and No. 23-284, R. Doc. 1-2.
[7] R. Docs. 1, 8 and No. 23-284, R. Docs. 1, 9.
[8] R. Doc. 1-1, p. 2, ¶ 9.

defendant/removing party MNS is a limited liability company with Mastec, Inc. as its sole member and is, therefore, a citizen of Florida; Defendant AG Quality is a limited liability company with one member, Adson Ribiero, who is a citizen of Mississippi; and Defendant MUSIC is incorporated and has its principal place of business in New Jersey.[9]  These defendants/proposed defendants are of diverse citizenship from Plaintiff; however, Boudreaux and Milton are alleged to be Louisiana citizens and, therefore, not diverse from Plaintiff.[10]  In the Motion, Plaintiff seeks leave to amend to add another non-diverse defendant, the City-Parish,[11] to consolidate his two Petitions into one comprehensive amended Complaint (as ordered by the Court),[12] and to revise his allegations against all defendants.  Defendants oppose the Motion to the extent Plaintiff seeks to add the City-Parish and to maintain claims against Boudreaux and Milton.[13]

Defendants have consistently contended that Boudreaux and Milton are improperly joined, which Plaintiff denies.[14]  Although a motion to remand is not currently pending, Plaintiff continues to challenge the Court's subject matter jurisdiction and to seek remand of the case contending that Boudreaux and Milton are proper parties.[15]  As such, the joinder issue is fully briefed and ripe for resolution.[16]

---

[9] R. Doc. 1, ¶¶ 14-15, R. Doc. 1-1, p. 1, and R. Doc. 51-1, pp. 1-2.  No. 23-284, R. Doc. 1, ¶¶ 10-14, R. Doc. 1-2, p. 1.  While the proposed Second Amended Complaint adequately alleges the citizenship of all Defendants (as Plaintiff was previously ordered to plead, *see* R. Doc. 49), it only alleges Plaintiff's residency. R. Doc. 51-1, p. 2, ¶ 2.  However, Plaintiff's Louisiana citizenship is adequately alleged in both of his state court Petitions. R. Doc. 1-1, p. 1, introductory paragraph and No. 23-284, R. Doc. 1-2, p. 1, introductory paragraph.
[10] R. Doc. 1, ¶ 16; R. Doc. 1-1, p. 1; and R. Doc. 51-1, p. 2. *See also* No. 23-284, R. Doc. 1, ¶ 15; R. Doc. 1-2, p. 1.
[11] R. Doc. 51-1, p. 2, ¶ 8.
[12] R. Docs. 27, 49.
[13] R. Docs. 53, 54.
[14] R. Doc. 1, ¶¶ 18-20 and No. 23-284, R. Doc. 1 ¶ 15.
[15] *See* R. Doc. 59, p. 1 ("Plaintiff contends herein that the Court lacks diversity subject matter jurisdiction because non-diverse defendants Rene P. Boudreaux, III ("Boudreaux"), Kevin Milton ("Milton"), and The City of Baton Rouge and Parish of East Baton Rouge, ("City Parish"), are properly joined.") and *id.* at pp. 2-3 ("In sum, Plaintiff respectfully submits that because Defendants have not borne their 'heavy burden' to show that the non-diverse defendants Boudreaux, Milton, or the City Parish were improperly joined, and thus this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a) and this case should be remanded *sua sponte*.").
[16] Plaintiff previously filed a motion to remand, arguing that the Court lacks subject matter jurisdiction because Boudreaux and Milton were properly joined. R. Doc. 14.  In a prior Order, Plaintiff was permitted to file a motion to

## II. LAW AND ANALYSIS

### A. Legal Standard for Remand

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[17] When, as here, jurisdiction is alleged based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[18] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[19] The removing party has the burden of proving federal diversity jurisdiction.[20] Remand is proper if at any time the court lacks subject matter jurisdiction.[21] The removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[22] If either Boudreaux and/or Milton are properly joined, and/or if Plaintiff is permitted to amend his complaint to name the City-Parish as a defendant, the parties would not be of diverse citizenship and the case must be remanded.

---

remand within seven days of the resolution of the current Motion (R. Doc. 49, p. 5); however, the parties have provided sufficient information with regard to the joinder issue such that there is no reason to delay resolution of the issue or for the parties to submit further briefing. *Rivero v. Fid. Invs., Inc.,* 1 F.4th 340, 344 (5th Cir. 2021) ("Courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'").

[17] 28 U.S.C. § 1441(a).
[18] 28 U.S.C. § 1332(a)(1).
[19] *Hinkle v. USAA Gen. Indem. Co.*, No. 17-156, 2017 WL 4411052, at *3 (M.D. La. Sept. 11, 2017), report and recommendation adopted, No. 17-156, 2017 WL 4401631 (M.D. La. Sept. 29, 2017), citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).
[20] *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).
[21] *See* 28 U.S.C. § 1447(c).
[22] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

### B. Defendants Have Not Borne Their Heavy Burden of Proving Boudreaux Is Improperly Joined[23]

The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity.[24] If a non-diverse defendant is improperly joined, a district court can disregard the citizenship of that defendant for the purposes of evaluating its jurisdiction.[25] "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."[26] In *Smallwood*, the seminal decision of the United States Court of Appeals for the Fifth Circuit on this issue, the Court "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[27] Here, there has been no allegation of fraud in the pleading of jurisdictional facts. Further, Defendants specifically argue improper joinder under the second method, *i.e.*, that Plaintiff is unable to establish a cause of action against Boudreaux.[28] Therefore, the only question before the Court is whether Defendants have shown "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[29] A court may resolve the issue of whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. "The court may conduct a Rule 12(b)(6) analysis, looking at the allegations of the complaint to determine whether the complaint

---

[23] Because Plaintiff has sufficiently alleged a claim against the non-diverse Boudreaux, the question of whether Plaintiff has viable claims against Milton and/or the City-Parish is not reached.
[24] *McDonal v. Abbott Laboratories,* 408 F.3d 177, 183 (5th Cir. 2005).
[25] *Williams v. Homeland Ins. Co. of New York,* 18 F.4th 806, 812 (5th Cir. 2021), citing *Flagg v. Stryker Corp.,* 819 F.3d 132, 137 (5th Cir. 2016).
[26] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*).
[27] *Smallwood,* 385 F.3d at 573, quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003).
[28] R. Doc. 53, p. 10; R. Doc. 54, p. 10.
[29] *Smallwood,* 385 F.3d at 573. *See also Williams,* 18 F.4th at 812 ("We typically evaluate this question by evaluating whether the plaintiff had any possibility of recovery against the non-diverse defendant in state court at the time of removal.") (citations omitted).

5

states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[30] "That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[31] "[T]he existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court."[32]

          1. <u>Pertinent Facts Alleged Against Boudreaux</u>

Plaintiff alleges in the proposed Second Amended Complaint that the fiber optic cable installation project started with the City-Parish retaining AT&T as the contractor. AT&T then retained MNS (or one of the Mastec entities) as subcontractor, who then retained AG Quality as a subcontractor.[33] The state court Petitions in effect at the time of removal allege the following facts regarding Boudreaux:

- Boudreaux was MNS's project manager.

- Boudreaux (and Milton) had the responsibility to directly supervise the installation of the fiber optic cable.

- AG Quality was retained to do the work and its workers trespassed on Plaintiff's property and caused damage.

- AG Quality trespassed on Plaintiff's neighbor's property and committed damage the week before, of which Boudreaux (and Milton) were aware.

- On February 10, 2022, Plaintiff met with Boudreaux (and Milton) regarding the damage to his property.

- Boudreaux stated the Mastec Defendants would pay Plaintiff's damages and, with approval from Mastec's chief financial officer, Boudreaux executed a three-

---

[30] *Smallwood*, 385 F.3d at 573.
[31] *Smallwood*, 385 F.3d at 573.
[32] *Williams,* 18 F.4th at 815 (citations omitted).
[33] R. Doc. 51-1, ¶¶ 3-5.

6

> paragraph Agreement ("Agreement") that provided for the payment of Plaintiff's damages in exchange for Plaintiff's release of all claims.
>
> - Plaintiff furnished documentation of $158,039.57 in damages to the Mastec Defendants, which they have not paid.
>
> - Plaintiff sought to enforce the Agreement against the Mastec Defendants and sought tort damages, as well as statutory penalties and attorney's fees, against Milton, AG Quality and MUSIC due to MUSIC's refusal to pay Plaintiff's property damage claim.[34]

The proposed Second Amended Complaint re-alleges many of these facts and specifically adds a negligence claim against Boudreaux, alleging, in pertinent part,[35] that Boudreaux is individually liable in tort for several negligent or intentional actions and inactions associated with the fiber optic installation, including the workers' trespass on Plaintiff's property and/or failing to properly supervise the work and failing to provide Boudreaux's "Dear Homeowner" flyer to Plaintiff (which was given to other property owners) before beginning work. Plaintiff contends that Boudreaux's failure to provide him with the flyer precluded Plaintiff from preventing the trespass on his property. Plaintiff suggests that he could have stopped AG Quality's entry onto his property had he received the flyer because he claims not to have the servitude referenced in the flyer. Plaintiff argues that the flyer, in conjunction with Boudreaux's knowledge of AG Quality's damage to Plaintiff's neighbor's property, demonstrates that Boudreaux engaged "in a collaborative effort" with Milton and/or AG Quality to trespass on Plaintiff's property.[36]

---

[34] R. Doc. 1-1, pp. 1-4; No. 23-284, R. Doc. 1-2, pp. 1-3.

[35] The proposed Second Amended Complaint also alleges that Boudreaux and Milton acknowledged that they visited Plaintiff's neighbor regarding her property damage and that Boudreaux acknowledged receipt of Plaintiff's damages documentation and forwarded it to Mastec, who refused to pay it and directed Plaintiff to look to AG Quality for payment. R. Doc. 51-1, ¶¶ 10, 12.

[36] R. Doc. 51-1, pp. 7-11 (alleging, *e.g.*, Boudreaux "independently and negligently create[ed] a project structure (as reflected on the "Dear Homeowner" flier …which created a fiber optic cable installation process which permitted, allowed and encouraged the employees and agents of Defendant AG [Quality] to violate Louisiana law by freely trespassing upon and damaging the property of all of the property owners on the project … By failing to create and enforce a project fiber optic cable installation process which required the employees and agents of Defendant AG [Quality] --- to comply with Louisiana law by obtaining the prior consent and authority of each of the affected property owners before entering upon and damaging the property… By failing to properly monitor and supervise the employees

7

2. <u>Plaintiff's Trespass Claim Against Boudreaux Survives a Fed. R. Civ. P. 12(b)(6) Analysis</u>[37]

Defendants argue that Plaintiff's negligence claims[38] against Boudreaux are foreclosed by La. R.S. §12:1320(B), which shields limited liability company employees from personal liability unless one of the following three exceptions in subsection (D) applies: fraud, breach of a professional duty, or the commission of a negligent or wrongful act.[39]  Defendants allege that

---

and agents of Defendant AG [Quality]… By failing and refusing to take any corrective measures, after being personally shown and advised of the similar damage to Plaintiff's next-door neighbor's property by AG's employees… By negligently hiring and/or permitting to be retained Defendant AG Quality… By negligently failing to timely provide Plaintiff with a copy of the "Dear Homeowner" flier [] or to otherwise timely inform Plaintiff of the fact of his next-door neighbor's property damages by AG's employees and agents prior to the incident involved herein, which would have permitted Plaintiff a reasonable opportunity to have stopped or prevented AG's employees and agents from trespassing…."). *See also* the flyer at R. Doc. 51-3, which contains an MNS logo and is authored by Boudreaux.  On the flyer, Boudreaux identifies himself as a Mastec Quality Control Inspector, advises homeowners of the fiber optic installation, and requests that homeowners give the workers access to their backyards and secure their pets.

[37] Plaintiff's contract claim against Boudreaux, which is considered under Louisiana law pursuant to *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, (1938)), lacks merit.  "In Louisiana, a disclosed agent is not liable to third parties for debts it has incurred on behalf of its principal." *H.U. Young, Inc. v. Duke Advert. Agency, Inc.,* 478 So.2d 1003, 1004 (La. Ct. App. 1985) (disclosed agent not liable for debt of principal) (citing La. Civ. Code art. 3013 and *Roll-Up Shutters, Inc. v. South Central Bell Telephone Co.,* 394 So.2d 796, 799 (La.App. 4 Cir. 1981)).  The Agreement references promises and obligations undertaken by Mastec and is signed by "Mastec," through Boudreaux as project manager.  Boudreaux did not personally bind himself in the Agreement, and therefore, as a disclosed agent, he is not liable to Plaintiff under the Agreement.  Furthermore, while the Petition and proposed Second Amended Complaint allege that Boudreaux stated that "he and Mastec" would pay Plaintiff, these pleadings specifically seek to enforce the terms of the *written* Agreement, not any verbal agreements.  R. Doc. 1-1, p. 2, ¶ 7 and R. Doc. 51-1, ¶ 10, but *see* R. Doc. 1-1, p. 3, ¶ 10 and prayer for damages ("Pursuant to La. Civil Code art. 3081, Plaintiff is entitled to **enforce the terms of the transaction and compromise agreement** dated March 21, 2022 …" and "WHEREFORE, PLAINTIFF PRAYS that the Court **enforce the transaction and compromise** dated March 21, 2022…by rendering judgment herein in Plaintiff's favor and against Defendants Mastec, Inc. and Rene P. Boudreaux, III, *in solido*….") and R. Doc. 51-1 at prayer for damages (same), and ¶ 12 (alleging that "both "MasTec" and Boudreaux" have failed and refused to timely pay **under the terms of the transaction and compromise agreement** dated March 21, 2022.") (emphasis added).  Notably, Boudreaux's alleged statement took place more than a month before the Agreement was executed and was not included within the Agreement's written terms.

[38] The Court is generally instructed to freely give leave to amend. Fed. R. Civ. Proc. 15.  Here, entry of a scheduling order was deferred pending resolution of subject matter jurisdiction.  The substantive analysis in this Report is limited to the tort claim against Boudreaux, which Plaintiff seeks leave to add in the Second Amended Complaint. However, because Boudreaux was already a defendant when the case was removed, the more stringent analysis of *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987), which is required when a plaintiff attempts to add a non-diverse defendant after removal, is not applicable.

[39] R. Doc. 53, pp. 11-13, R. Doc. 54, pp. 12-13. La. R.S. § 12:1320 which provides, in pertinent part: "A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.  B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company…D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person…."

Louisiana state courts have held that the negligent or wrongful acts in this context must be committed "outside one's capacity as a member, manager, employee or agent of a limited liability company or which while done in one's capacity as a member, manager, employee or agent of a limited liability company also violates some personal duty owed by the individual to the injured party."[40] Defendants argue that Plaintiff has not alleged that Boudreaux acted outside of his capacity as an MNS employee.[41] Defendants further argue that, while Plaintiff alleges Boudreaux failed to perform his duties as the project manager, Plaintiff has not sufficiently alleged facts to show that Boudreaux owed Plaintiff a personal duty. In particular, Plaintiff did not allege that Boudreaux was present on Plaintiff's property or made any promises to Plaintiff before or during the acts giving rise to the alleged damage.[42] Defendants contend that the Agreement and the flyer, both of which Plaintiff admits were given to him after the damage occurred, do not give rise to a personal duty because Boudreaux signed/authored them as an MNS employee.[43]

Plaintiff does not substantively address La. R.S. §12:1320 in brief as it relates to Boudreaux.[44] Moreover, Plaintiff raises several newly asserted facts that he contends are relevant; however, facts newly raised in reply, which were not asserted in the proposed Second Amended

---

[40] R. Doc. 53, pp. 12-13 and R. Doc. 54, p. 12, citing *Utila Dive Ventures v. Bay Island Yacht Restoration, LLC*, No. 10–2621, 2011 WL 4101496 (E.D. La. Sept.14, 2011) at *2–3 and *Dykes v. Maverick Motion Picture Grp., L.L.C.*, No. 08-536, 2010 WL 2985553, at *7 (M.D. La. May 11, 2010) (other citations omitted).
[41] R. Doc. 53, p. 13 and R. Doc. 54, p. 12.
[42] *Id.*
[43] R. Doc. 53, pp. 13-14, citing the flyer's identification of Boudreaux as "an employee & representative for the MasTec Infrastructure Construction Corporation" and *Meisel v. Natal Homes, Inc.,* 447 So.2d 511, 512-13 (La. Ct. App. 1984) (reversing judgment against vice president of company on home defect claim when vice president signed contract of sale as vice president, and on agreements and blue prints bearing the name of the company, and holding that vice president's promises to correct the defects were made in his capacity as a corporate agent) and R. Doc. 54, p. 13.
[44] At most, Plaintiff mentions the statute in connection with Boudreaux in one sentence in his conclusion. R. Doc. 59, p. 23, citing *Pitre v. Circle K Stores, Inc.*, No. 21-582, 2022 WL 4362291 (M.D. La. Aug 26, 2022); *Roussell v. PBF Consultants, LLC*, No. 18-899, 2020 WL 5901118 (M.D. La. Sep 18, 2020); and *Marbury v. Cracker Barrel Old Country Store, Inc.*, No. 18-905, 2019 WL 4667340 (M.D. La. Sep 06, 2019) (Dick, C.J.). Plaintiff's reliance on the foregoing cases is misplaced. *Pitre, Roussell,* and *Marbury* all considered individual liability under *Canter v. Koehring Co.,* 283 So.2d 716, 721 (La. 1973), not La. R.S. § 12:1320.

9

Complaint, are not considered.[45] As to the facts and arguments that are considered, Plaintiff contends that he never gave consent for any of the Defendants to enter his property and Boudreaux is personally liable for civil and/or "illegal" trespass.[46] Plaintiff re-avers that the flyer shows that Boudreaux was individually engaged in a collaborative effort with AG Quality to trespass and cause damage to his property; that Boudreaux failed to timely provide the flyer to Plaintiff; and that Boudreaux failed to properly oversee AG Quality's workers, who also trespassed on Plaintiff's property.[47] Plaintiff alleges that Defendants are solidarily liable pursuant to La. Civ. Code art. 2324, and whether Plaintiff can prove Boudreaux's personal liability is not "an appropriate inquiry at this juncture."[48]

This Court has recognized La. R.S. §12:1320's limitation of liability afforded to LLC employees and the exceptions thereto.[49] Because Plaintiff has not alleged that Boudreaux committed fraud or breached a professional duty,[50] the only potentially applicable exception in La.

---

[45] *Bavely, Tr. of AAA Sports, Inc. v. Panini Am., Inc.,* No. 22-93, 2022 WL 19076610, at *3 (E.D. Tex. Oct. 19, 2022) ("Arguments raised for the first time in a reply or sur-reply brief are untimely. *RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr. - DTD 2/8/95*, 836 Fed. Appx. 232, 235 (5th Cir. 2020) (recognizing the Fifth Circuit Court of Appeals and district courts of the Fifth Circuit do not review arguments raised for the first time in a reply brief)….")(other citations omitted). *See* R. Doc. 59, pp. 8-12, and in particular, Plaintiff's allegations that Boudreaux (and Milton) were "boots on the ground" overseers for AG Quality, that Boudreaux admitted that he was negligent and failed in his duty of oversight, and that Boudreaux authored the "Dear Homeowner" flyer, was responsible for its posting, admitted that it was his responsibility to post the flyers, and apologized to Plaintiff for failing to timely give Plaintiff a flyer.
[46] R. Doc. 59, pp. 6-7, 14, generally citing *Richard v. Richard*, 09-539, p. 5, (La.App. 3 Cir. 11/04/09), 24 So.3d 292, 296 and *Watts v. Begnaud,* 2018-357 (La. App. 3 Cir. 12/6/18), 2018 WL 6433145 (other citations omitted) and La. Civ. Code arts. 2315, 2316. Plaintiffs alleges "illegal" trespass in his proposed Second Amended Complaint at R. Doc. 51-1, ¶ 8, and specifically refers to criminal trespass under La. R.S. §14:63 in his reply brief. R. Doc. 59, p. 6. While Plaintiff has no private cause of action under a criminal statute, the allegation is relevant to the discussion *below.*
[47] R. Doc. 59, pp. 11-15.
[48] R. Doc. 59, p. 15. La. Civ. Code art. 2324 provides, in pertinent part: "A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."
[49] *See Audubon Real Estate Assocs., L.L.C. v. Audubon Realty, L.L.C.,* No. 15-115, 2016 WL 740467 (M.D. La. Feb. 24, 2016) (Dick, C.J.).
[50] At most, Plaintiff alleges that Boudreaux was a project manager and/or quality control inspector, which does not fall within the scope of legislatively recognized professions set out in *Ogea v. Merritt,* 2013-1085 (La. 12/10/13), 130 So.3d 888, 898-899, as a basis for the professional duty exception to the general rule that an LLC employee is shielded from personal liability.

10

Case 3:23-cv-00202-SDD-EWD    Document 64    08/22/24    Page 12 of 17

R.S. § 12:1320(D) is the third, *i.e.*, whether Boudreaux committed a negligent or wrongful act.[51] The factors considered in analyzing the third exception were handed down by the Louisiana Supreme Court in *Ogea v. Meritt*, a property damage case, as follows:

> 1) whether the member's conduct could be fairly characterized as a traditionally recognized tort; 2) whether the member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member's capacity as a member.[52]

"A court is to evaluate each situation on a case-by-case basis."[53]

As to the first *Ogea* factor, the court held, "…when examining whether a member of an LLC can be personally liable in tort, the threshold question to be asked regarding the member is therefore: "Was any duty of care owed to plaintiff (was it a foreseeable risk)?... [and] the duty we are discussing here must be a duty in the tort sense …."[54] The claim in the proposed Second Amended Complaint that could potentially be characterized as a traditional tort is trespass by the workers allegedly supervised by Boudreaux. A civil trespass to property, which is a tort action, occurs when "one [] goes upon the property of another without the other's consent."[55] The

---

[51] *See, e.g., SMH Enterprises, L.L.C. v. Krispy Krunchy Foods, L.L.C.,* 340 F.R.D. 554, 564 (E.D. La. 2022) ("SMH's proposed First Amended Complaint does not set forth any allegations to support claims of fraud or breach of professional duty by either the Members or PPM, which leaves only the 'other negligent or wrongful conduct' exception available to support its claim.").
[52] *SMH Enterprises, L.L.C.*, 340 F.R.D. at 564-65 citing *Ogea,* 130 So.3d at 900-01. *See also Bd. of Commissioners of the Port of New Orleans v. Stern,* No. 15-6527, 2016 WL 6833632, at *4 (E.D. La. Nov. 21, 2016). The parties in this case did not address the *Ogea* factors. Defendants' authority, *i.e.*, *Utila Dive Ventures*, 2011 WL 4101496, and *Dykes,* 2010 WL 2985553, are Louisiana appellate court opinions that pre-date *Ogea*.
[53] *Ogea,* 130 So.3d at 905-906 (where the plaintiff contracted with the member of an LLC for the construction of a new home, the sole member of the LLC was not personally liable to, and owed no personal duty to, the plaintiff for a refund and damages under the New Home Warranty Act and construction defects despite that the member operated the bulldozer that gave rise to a defective concrete pad and supervised the contractor who poured a defective concrete foundation).
[54] *Ogea,* 130 So.3d at 901.
[55] *Masita v. Maumoulides,* 2020-0952 (La.App. 1 Cir. 11/15/21), 341 So.3d 11, 32, writ granted, judgment aff'd in part, rev'd in part sub nom. (on other grounds)*, Misita v. Maumoulides,* 2022-00266 (La. 4/26/22), 336 So.3d 886 and *Pepper v. Triplet,* 2003-0619 (La. 1/21/04), 864 So.2d 181, 197.

11

Louisiana's First Circuit Court of Appeals' *Masita v. Maumoulides* decision, which also involved a claim of trespass, is instructive. In *Masita*, the plaintiff property owners alleged that the subcontractor who installed, and/or caused his workers to install, a fence on their property without their consent engaged in trespass, which caused the property to flood.[56] The contractor claimed exemption from personal liability under La. R.S. §12:1320(B) because he performed the work in his capacity as a member of his LLC. The *Masita* court found that the pertinent exception in La. R.S. §12:1320(D) was whether the contractor engaged in negligent and wrongful conduct, and applied the four *Ogea* factors.[57] As to the first factor, the *Masita* court found "… whether the installation of the chain link fence by [the contractor], or at [the contractor's] direction, was an unlawful physical invasion of [the plaintiff's] property so as to entitle [the plaintiff] to damages for the tort of trespass is a material issue of fact."[58] Similarly, as to the second factor, *i.e.*, whether the member's conduct could be fairly characterized as a crime for which a natural person could be held culpable, the court held "whether such a trespass is sufficient to constitute a criminal trespass, [...] involves subjective facts, which do not support summary judgment in this case."[59] Continuing to the third *Ogea* factor, the court noted that the work was not done in furtherance of a contract, which also weighed in favor of imposing personal liability.[60] Finally, the court found that the fourth *Ogea* factor was the only one weighing in the contractor's favor by virtue of his affidavit,

---

[56] 341 So.3d at 18, 30, 32.
[57] 341 So.3d at 28, 33.
[58] 341 So.3d at 11, 33.
[59] La. R.S. § 14:63 provides, in pertinent part: "Criminal trespass… B. (1) No person shall enter upon immovable property owned by another without express, legal, or implied authorization…C. (1) No person shall remain in or upon property, movable or immovable, owned by another without express, legal, or implied authorization…D. It shall be an affirmative defense to a prosecution for a violation of Subsection A, B, or C of this Section, that the accused had express, legal, or implied authority to be in the movable or on the immovable property…." Both civil and criminal trespass require that the trespasser lacked consent/authority to be on the property.
[60] The court noted that, per *Ogea,* "Under the 'contract factor,' a member is less likely to be found personally liable for a debt or obligation of the business if his conduct 'was required by, or was in furtherance of, a contract between the claimant and the LLC.' The rationale for this factor is that, under Subsection B, members should not be liable for an obligation of the LLC. Thus, if the member acts to satisfy one of these obligations, he should be more likely to qualify for limited liability." *Masita,* 341 So.3d at 29, citing *Ogea,* 130 So.3d at 904.

which attested that his work was performed in his capacity as a limited liability company member.[61] Ultimately, the court reversed summary judgment in favor of the contractor, because of outstanding issues of fact, holding:

> Since the tort factor alone may be dispositive because finding that a member breached a personal tort duty owed to the claimant could be enough to "pave the way to a member's personal liability for the tort," each case must be decided on its specific facts, and we have been instructed to analyze all of the factors in our decisions, we conclude the trial court erred in dismissing [the contractor] from this lawsuit in his individual capacity by summary judgment under the facts of this case.[62]

Here, the reasoning of *Masita* applies even more strongly because the propriety of Boudreaux's joinder is determined through a Fed. R. Civ. P. 12(b)(6) analysis, requiring the Court to look at the allegations of the Complaint to determine whether there is no possibility that Plaintiff can recover against Boudreaux, without considering external evidence. Additionally, *Masita* also involved a situation, similar to this case, where the LLC employee did not personally trespass; rather, the trespass was allegedly committed by workers he supervised.[63] In his Second Amended Complaint, Plaintiff alleges the following facts: Boudreaux was the project manager for MNS; Boudreaux oversaw the fiber optic installation work and the workers; Plaintiff did not authorize the workers to be on his property; Plaintiff's property was damaged by the work; Boudreaux stated that MNS would compensate Plaintiff for the damage; and Boudreaux is liable for the workers' trespass on Plaintiff's property.[64] Like *Masita*, the first three *Ogea* factors weigh in favor of

---

[61] 341 So.3d at 33.
[62] *Id.*, citing *Ogea,* 130 So.3d at 905.
[63] In *Masita,* the contractor testified that he did not personally install the portion of fence that was allegedly trespassing on the plaintiffs' property but, rather, that "his 'guys'" probably installed it. *See also, Richard v. Richard*, 2009-539, 24 So.3d 292, 296 (La.App. 3 Cir. 11/4/09) ("Even though the work may have been done by another, the party supervising and/or directing the work and ordering the trespass is liable.") (citation omitted).
[64] R. Doc. 51-1, ¶¶ 6, 8, 10-11, 16 and R. Doc. 49. The original Complaint also alleges that Boudreaux was the project manager who was responsible to oversee the work and that MNS's subcontractor "illegally entered upon Plaintiff's property without authority and caused substantial damage," for which Boudreaux stated MNS would compensate Plaintiff. R. Doc. 1-1, ¶¶ 3-5, 7.

Boudreaux's potential personal liability because Plaintiff has plausibly alleged that the workers Boudreaux supervised trespassed on Plaintiff's property and caused damage, while engaging in work that was not done in furtherance of a contract between MNS and Plaintiff.[65] "Since the tort factor alone may be dispositive because finding that a member breached a personal tort duty owed to the claimant could 'pave the way to a member's personal liability for the tort,'" which would prevent Boudreaux from taking advantage of the limitation of liability found in La. R.S. § 12:1320(B), Plaintiff states a potential tort claim against Boudreaux under state law.[66]

### 3. Defendants Have Not Negated the Possibility of Boudreaux's Liability

Once a plaintiff has stated a claim against the non-diverse defendant, the defendant "must come forward with evidence to negate a possibility of liability against the non-diverse defendant."[67] However, Defendants have not come forward with such evidence. Whether Boudreaux is responsible for the workers' trespass on Plaintiff's property raises fact issues to be determined by the factfinder, which are not properly resolved at this stage of the case.[68] For example, even if the property map proffered by Defendants were considered as evidence of the

---

[65] Boudreaux alleges in opposition that he worked in his capacity as an employee/agent of MNS, which renders the fourth *Ogea* factor in his favor. R. Doc. 54, pp. 12-13. *See also* the flyer, in which Boudreaux identifies himself as an employee of MNS. R. Doc. 51-3. *Masita* reversed summary judgment in favor of the contractor notwithstanding that the fourth *Ogea* factor weighed in the contractor's favor. *Masita*, 341 So.3d at 33.

[66] No opinion is reached as to the ultimate viability of this claim, which is subject to resolution by the state court. Furthermore, because Plaintiff has stated a potential claim of trespass, the claim for negligent supervision is not reached. Plaintiff also alleges in brief that Defendants bear solidary liability pursuant to La. Civ. Code art. 2324, which provides for such liability for joint conspirators. While the proposed Second Amended Complaint does not specifically allege "conspiracy," or La. Civ. Code art. 2324, it does allege that Boudreaux engaged in "collaborative efforts" with AG Quality and/or Milton to trespass on Plaintiff's property and that Defendants bear solidary liability. R. Doc. 51-1, ¶¶ 16-17, 27, and prayer for damages. In *Audubon Real Estate Assocs., L.L.C.,* the plaintiff alleged La. Civ. Code art. 2324 as the source of the individual LLC member's liability, and this Court found that an allegation that the defendant "actively and knowingly participated in the [LLC's trademark] infringements" stated a plausible claim for relief under Article 2324 sufficient to survive a motion to dismiss. 2016 WL 740467 at *4.

[67] *Mathes v. PNK (Baton Rouge) P'ship,* No. 17-392, 2017 WL 5762434, at *5 (M.D. La. Nov. 6, 2017), report and recommendation adopted, No. 17-392, 2017 WL 5760882 (M.D. La. Nov. 28, 2017) (Dick, C.J.).
 citing *Randolph v. Wyatt,* No. 09-2020, 2010 WL 569753, at *5 (W.D. La. Feb. 11, 2010) (other citations omitted). *See Haynes v. Healthcare Servs. Grp., Inc*., No. 13-649, 2014 WL 2769080, at *4 (M.D. La. May 30, 2014), report and recommendation adopted, No. 13-649, 2014 WL 2768814 (M.D. La. June 18, 2014)*,* quoting *Randolph*.

[68] The Fifth Circuit has "frequently cautioned the district courts against pretrying a case to determine removal jurisdiction…." *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir. 1990).

servitude that they contend authorized their presence on Plaintiff's property, the map is difficult to read, and it is not clear from the map whether the work and/or alleged damage was solely confined to the servitude.[69] This is not the kind of "discrete and undisputed" fact that supports piercing the pleadings to determine the propriety of joinder.[70]

### III. CONCLUSION AND RECOMMENDATION

Plaintiff's Motion should be granted. He has stated at least one trespass claim against Rene P. Boudreaux, III, a non-diverse defendant, in the proposed Second Amended Complaint. Defendants have not come forward with evidence to negate the possibility that Boudreaux may be liable to Plaintiff, such that they have not met their heavy burden of proving that Boudreaux was improperly joined.[71] Further, the Fifth Circuit has held that the removal statute, 28 U.S.C. § 1441, must be strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[72] As there is no dispute that Plaintiff and Boudreaux are both Louisiana citizens for purposes of diversity jurisdiction, and as Defendants have not shown that Boudreaux was improperly joined such that his citizenship may be disregarded, Defendants have failed to establish this Court's subject matter jurisdiction over this case based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[73] Accordingly,

**IT IS RECOMMENDED** that the Motion for Leave to File Second Amended Complaint, filed by Plaintiff Robert Talley,[74] be **GRANTED.**

---

[69] *See, e.g.,* R. Doc. 60-1 (property map, proffered with Defendants' Joint Motion for Judicial Notice and Joint Motion for Leave to File a Sur-reply) and R. Doc. 62 (denying same).
[70] *Davidson v. Georgia-Pac., L.L.C.,* 819 F.3d 758, 766 (5th Cir. 2016) citing *Smallwood*, 385 F.3d at 573-74 & n. 12 for evidence such as "the in-state doctor defendant did not treat the plaintiff," that "the in-state pharmacist defendant did not fill a prescription for the plaintiff patient," that "a party's residence was not as alleged, or any other fact that easily can be disproved if not true.").
[71] *See Smallwood,* 385 F.3d at 573.
[72] *Gasch*, 491 F.3d at 281-82.
[73] No party has argued, and no grounds are apparent to support the exercise of federal question jurisdiction under 28 U.S.C. § 1331.
[74] R. Doc. 51.

**IT IS FURTHER RECOMMENDED** that this matter be **REMANDED** to the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, for lack of subject matter jurisdiction.

Signed in Baton Rouge, Louisiana, on August 22, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**